**OVERSEAS EDUCATION
ASSOCIATION, INC.,
Petitioner,**

v.

**FEDERAL LABOR RELATIONS
AUTHORITY, Respondent.**

No. 87–1279.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 16, 1988.
Decided Oct. 7, 1988.

Ronald R. Austin, with whom Richard J. Hirn, Washington, D.C., was on the brief, for petitioner.

James F. Blandford, Atty., Federal Labor Relations Authority, Washington, D.C., for respondent. William E. Persina, Acting Sol., Arthur A. Horowitz, Associate Sol. and Elsa D. Newman, Atty., Federal Labor Relations Authority, Washington, D.C., were on the brief for respondent. Ruth E. Peters, Sol.*, Federal Labor Relations Authority, Washington, D.C., also entered an appearance for respondent.

Before WALD, Chief Judge, and STARR and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge STARR.

* At time of appearance.

STARR, Circuit Judge:

This case brings before us a determination by the Federal Labor Relations Authority ("FLRA" or "Authority") that three collective bargaining proposals advanced by the Overseas Education Association ("OEA") were not within the agency-employer's duty to bargain under Title VII of the Civil Service Reform Act of 1978, 5 U.S.C. § 7114(a)(4) (1982). *Overseas Education Association, Inc. and Department of Defense, Office of Dependents Schools,* 27 F.L.R.A. 492 (1987). Finding no error in the FLRA's determination, we deny the petition for review.

I

OEA, an affiliate of the National Education Association, is the exclusive representative of a rather sizable bargaining unit, consisting of approximately 8,000 teachers, counselors, and other school-level professional personnel employed across the globe by the Department of Defense Dependents Schools (DODDS). DODDS operates a vast educational network, encompassing approximately 250 elementary and secondary schools situated at or near U.S. military bases overseas. DODDS' purpose, as one might expect, is to provide and operate educational facilities for eligible dependents of both U.S. military and civilian personnel stationed abroad.

Negotiations for the current collective bargaining agreement between OEA and DODDS began in 1982. Three proposals advanced by OEA during these negotiations are the subject of this appeal. The three proposals relate to travel or educational benefits sought by members of the bargaining unit upon their retirement or departure from DODDS service. Specifically, the proposals are: *Proposal 22* provides that, upon retirement, covered employees would be authorized for space-available travel on military aircraft; *Proposal 43* provides that, upon retirement, a unit employee would be entitled to space-available, tuition-free education for all dependents if the employee continues to re-

side overseas; and, finally, *Proposal 44* provides that dependents of unit employees who are already authorized to attend a DODDS school (or an approved non-DODDS school) can complete their education requirements notwithstanding their employee-parent's (or sponsor's) death or departure from the overseas post.

Confronted with these proposals, DODDS demurred, contending that they fell outside the domain of bargainable subjects. OEA thereupon mounted a negotiability appeal to the FLRA, *see* 5 U.S.C. 7117(c). The Authority upheld the agency's declination to bargain, on the ground that the proposals failed to comport with the second prong of the FLRA's increasingly familiar *Antilles* test. That test, which derives its name from the case of *Antilles Consolidated Education Association and Antilles Consolidated School System*, 22 F.L.R.A. 235 (1986), subjects bargaining proposals to two inquiries: (1) whether the proposal pertains to bargaining unit employees; and (2) the nature and extent of the proposal's effect on the *working conditions* of unit employees. The first prong of the *Antilles* test is not in question here. The second prong, which provides the bone of contention between the parties, derives from section 7103(a)(14) of the statute, which defines "conditions of employment" as "personnel policies, practices, and matters, whether established by rule, regulation, or otherwise, *affecting working conditions....*"

In its decision, the FLRA concluded that the three proposals failed to satisfy the threshold negotiability criterion of "affecting working conditions." The FLRA reasoned that Proposals 22 and 43 did not have a sufficiently direct relationship or nexus with actual working conditions, because they would only affect the rights of unit employees upon *retirement.* The Authority set forth its conclusion in this respect in the following way:

"[I]t has not been demonstrated that the matter proposed would serve to increase employee retention or to contribute to the ability of the employer to maintain a stable and sufficient work force overseas. Other than providing a promise of benefit during their retirement, the proposal has no relationship to the working conditions of bargaining unit employees. Based on the limited nature and extent to which this proposal would relate to the working conditions or employment relationship of bargaining unit employees, we conclude that it does not concern conditions of employment.

27 F.L.R.A. at 525; Joint Appendix (J.A.) at 79.

Next, the FLRA concluded that the requisite nexus did not exist between the final proposal (Proposal 44) and working conditions of OEA employees. In support of this finding, the Authority distinguished its (uncontested) conclusion that proposals regarding educational benefits for dependents of *active* employees are negotiable:

[T]he purpose of the legal provisions which form the basis for finding that proposals relating to dependents' education concern conditions of employment is compensating employees for hardships and additional expenses incident to their service overseas as well as facilitating recruitment and retention of employees in overseas posts of duty. Given the circumstances specified in [Proposal 44] —that an employee is no longer serving in an overseas post of duty—any relationship to this purpose or to the legal provisions is not apparent.

27 F.L.R.A. at 543; J.A. at 97.

This petition for review followed.

## II

It is well settled that our role in reviewing the FLRA's negotiability determinations is narrow. Section 7123(c) of the statute provides that judicial review is to be conducted in accordance with section 10(e) of the Administrative Procedure Act, 5 U.S.C. § 706 (1982). *See* 5 U.S.C. § 7123(c). We are thus obliged to uphold the FLRA's determinations "if they are supported by substantial evidence[,] ... are not arbitrary, capricious, or an abuse of discretion[,] and are otherwise in accordance with law." *Am. Fed. of Govern.*

*Emp., Local 2094 v. FLRA*, 833 F.2d 1037, 1040 (D.C.Cir.1987).

The Authority's decision in this case readily passes muster under the governing standard of review. As we saw above, the fulcrum of the FLRA's analysis was that the specific proposals in question were simply too remote and speculative with respect to working conditions of unit employees. At the same time, the Authority recognized that travel benefits and educational opportunities for both active unit employees and their dependents were sufficiently connected to the terms and conditions of employment by virtue of the unique nature of DODDS' mission. 27 F.L.R.A. at 522; J.A. at 77. That is to say, teachers in the DODDS system were called upon to remove themselves from the comfortable, familiar confines of the U.S.A. and to situate themselves (and their dependents) at or near military posts abroad. This fact rendered relevant for bargaining purposes various aspects of living conditions which would not ordinarily relate to the statutory standard of "conditions of employment." *Id.* But the FLRA drew the pivotal line in this case at benefits sought for the golden years of retirement (or after the employee's departure from active service).** Such benefits, the Authority reasoned, failed to establish any direct link to the statutory standard of "working conditions." *See Am. Fed. of Govern. Emp., Local 2094 v. FLRA*, 833 F.2d at 1043 ("[t]he record must establish ... a direct link between the proposal and the work situation or employment relationship of the bargaining unit employees").

This approach (of eschewing remote and speculative connections to working conditions) has been applied by the Authority in a variety of situations. *See, e.g., Antilles Consolidated Education Association and Antilles Consolidated School System*, 22 F.L.R.A. at 236–237 (employee access to retail, recreational, and medical facilities during off-duty hours found to have no direct relationship to working conditions and, hence, not negotiable); *National Ass'n of Gov. Emp., Local R5–168 and Dept. of the Army, Headquarters 5th Infantry Div. and Ft. Polk, La.*, 19 F.L.R.A. 552 (1985) (use of recreational facilities while on off-duty status not negotiable); *U.S. Air Force 2750th Air Base Wing Hdq., Air Force Logistics Command, Wright–Patterson Air Force Base, Ohio and AFGE, AFL–CIO, Local 1138*, 16 F.L.R.A. 335 (1984) (use of health club facilities not negotiable). *Cf. AFGE, AFL–CIO and Air Force Logistics Command, Wright–Patterson Air Force Base, Ohio*, 2 F.L.R.A. 604 (1980) (proposal with respect to a union-operated day care facility on agency property held negotiable by virtue of its direct affect on current bargaining unit employees).

In short, none of the three proposals would affect an employee while he or she is still working for DODDS. These desired post-service emoluments are, the FLRA could reasonably conclude, simply too distant and speculative to have a direct impact on an employee's day-to-day allegiance to his or her job. As the FLRA puts it, "retirement effectively destroys the nexus between the subject matters of these proposals and the working conditions of the bargaining unit." FLRA Br. at 21.

Under these circumstances, we are unpersuaded that the Authority's determination represents an unreasonable interpretation or application of the statute. Nor has the union demonstrated that the Authority has been inconsistent in the application of the governing standards. Under these circumstances, we are duty bound to defer to the Authority's interpretation, in accordance with the principles enunciated by the Supreme Court in *Bureau of Alcohol, To-*

---

** The Authority treated the final proposal under review (Proposal 44) as one, broadly, involving individuals who were no longer in service. This was not an unreasonable interpretation, especially since OEA chose to craft its proposal so as to include not only unit employees who die in service but, as well, an amorphously open-ended category of those who "leave[ ] the area." 27 F.L.R.A. at 541. We are thus not confronted with the FLRA's determination as to a more specific proposal directed solely at the situation where an employee dies in service.

bacco and Firearms v. FLRA, 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983) (*BATF*) and this court's decisions handed down in *BATF*'s wake. *See, e.g., Overseas Educ. Ass'n, Inc. v. FLRA,* 827 F.2d 814, 816 (D.C.Cir.1987); *National Treasury Employees Union v. FLRA,* 810 F.2d 295, 297 (D.C.Cir.1987).

*Denied.*