**U.S. DEPARTMENT OF THE ARMY, RED RIVER DEPOT, TEXARKANA, TEXAS, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent,**

**National Association of Government Employees, Local R14–52, Intervenor.**

No. 91–1472.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 2, 1992.

Decided Nov. 6, 1992.

Jacob M. Lewis, Attorney, Dept. of Justice, with whom Stuart M. Gerson, Asst. Atty. Gen., and William Kanter, Attorney, Dept. of Justice, Washington, D.C., were on the brief, for petitioner.

Frederick M. Herrera, Attorney, Federal Labor Relations Authority, with whom William E. Persina, Sol., and William R. Tobey, Deputy Sol., FLRA, Washington, D.C., were on the brief, for respondent.

Neil Curtis Bonney, Virginia Beach, Va., entered an appearance for intervenor, National Ass'n of Government Employees, Local R14–52.

Before BUCKLEY, WILLIAMS, and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge D.H. GINSBURG.

D.H. GINSBURG, Circuit Judge:

The U.S. Department of the Army, Red River Army Depot, Texarkana, Texas (the Employer) appeals a decision by the Federal Labor Relations Authority ordering it to engage in collective bargaining over the establishment of a so-called "gainsharing" program. The National Association of Government Employees (the Union) has intervened in support of the FLRA. For the reasons set forth below, we remand this matter to the Authority for clarification of its position.

## I. BACKGROUND

The Employer tested a gainsharing program from October 1988 through March 1989. Such a program provides financial rewards to employees for increases in productivity above a specified baseline level of performance. The savings realized from any increases in productivity above the baseline level are divided between the employer and the employees.

When the Employer discontinued the gainsharing program, the Union proposed reinstating it, with 50%· of the proceeds from the program going to fund employee awards and 50% to be retained by the Employer. The Employer refused to bargain over the proposal, claiming it was non-negotiable because it would impermissibly interfere with management's right under § 7106(a) of the Federal Service Labor–Management Relations Statute "to determine [its] budget." The Union appealed the Employer's determination of non-negotiability to the FLRA. The Authority held that the proposal is negotiable and ordered the Employer to bargain over it.

The Employer then petitioned this court for review. We may set aside the Authori-

ty's decision only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Overseas Educ. Ass'n v. FLRA*, 858 F.2d 769, 771–72 (D.C.Cir.1988).

## II. ANALYSIS

■ A federal employer is obliged to bargain in good faith with the union representing its employees "with respect to conditions of employment." 5 U.S.C. § 7114(a)(4); 5 U.S.C. § 7102(2). The employer's bargaining obligation is limited, however, by § 7106 of the Statute, which provides that "nothing in this chapter shall affect the authority of any management official of any agency ... to determine the ... budget ... of the agency." 5 U.S.C. § 7106. Because any proposal that entails a cost to management, if accepted, would literally "affect" the federal employer's right to determine its budget, the FLRA has long held that a proposal has the proscribed effect only if it "interferes with [the employer's] right to determine its budget." *American Federation of Government Employees, AFL–CIO*, 2 F.L.R.A. 604, 607–08 (1980) (*Wright–Patterson*) (finding expenditure of funds not enough to interfere with budget because "to one extent or another, most proposals would have the effect of imposing costs upon the agency which would require the expenditure of appropriated agency funds"). In order to establish such interference, the Employer "must make a substantial showing that the proposal requires the inclusion of a particular program or amount in its budget *or* that the proposal will result in significant and unavoidable increases in cost not affected [sic] by compensating benefits." *Fort Stewart (Georgia) Association of Educators and Fort Stewart Schools*, 28 F.L.R.A. 547, 551 (1987) (emphasis added).

■ In this case, the Employer challenges the negotiability of the gainsharing proposal only under the first part of the *Wright–Patterson* test. *Cf. Fort Stewart Schools v. FLRA*, 495 U.S. 641, 651, 110 S.Ct. 2043, 2049, 109 L.Ed.2d 659 (1990) (applying the second part of the *Wright–*

*Patterson* test with apparent approbation). In order to determine whether a proposal requires "the inclusion of a particular program or amount in [the] budget" of a federal employer, one must know both what is meant by a "budget" and what it means to "include" something in it. The Authority has long since adopted a dictionary definition of the term "budget" as "a statement of the financial position of a body for a definite period of time based on detailed estimates of planned or expected expenditures during the period and proposals for financing them." *Wright–Patterson*, 2 F.L.R.A. at 608 (citing Webster's Third New International Dictionary). That is certainly a permissible interpretation of the statute, by which we must therefore abide. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

■ On the other hand, the Authority has never squarely addressed what it means to "include" something in a budget; its opinion in this case does not even advert to the question. At oral argument, the Authority advanced a formalistic approach, arguing that "inclusion" means "inclusion of a particular line in the federal employer's budget." While that approach may be reasonable, it is at this point only counsel's, not the Authority's, position. The Employer urged the adoption of a different approach: that any "proposal specifying dollar amounts [must be included in the budget because it] leaves management without any choice as to how to use available resources." Appellant's Reply Brief at 7. We must therefore remand the issue for clarification by the FLRA itself. *See SEC v. Chenery*, 318 U.S. 80, 94, 63 S.Ct. 454, 462, 87 L.Ed. 626 (1943).

Even if the Authority on remand adopts the approach urged by its counsel, the Authority needs to ascertain how the gainsharing program is implemented in order to apply the *Wright–Patterson* test. Whether the Union's proposal would pass muster under the *Wright–Patterson* test almost certainly depends upon how "gains" are to be calculated—which is not clear from the face of the proposal and as to which the

FLRA made no determination. The "gains" resulting from a gainsharing program must be ascertained by reference to some baseline expectation of productivity. (For example, in budgeting for Year 1 an employer anticipates that it will take 100 hours of labor, at so many dollars per hour, to do a particular job.) If, as the Authority indicated at oral argument, under the Union's proposal the Employer could unilaterally adjust the baseline productivity level each year to reflect prior productivity gains, then the program would have no impact upon the budget, formally conceived. (Suppose, to continue the example, that because of increased productivity the job is done in Year 1 using only 90 hours of labor; the 10 hours of wages saved is divided equally between awards to employees and net savings to the employer. In Year 2, the employer budgets for only 90 hours of labor, that is the amount used, and there are no employee awards or employer savings in the budget.) Under that interpretation, the proposal entails no requirement that any funds, whether generated by the gainsharing program or otherwise, be used to fund a specific line item in the budget; if no gains are made during the budget year, then there is no sharing.

If, however, the Employer could not adjust the baseline from year to year, then the program might well be non-negotiable under the first part of the *Wright–Patterson* test. Management would be constrained to budget, in particular line items, amounts for expenses it does not expect to incur, and to use the money in part for employee awards. (In the example, in Year 2 the Employer would be required to budget for 100 hours of labor even though it knows that only 90 hours are required, and that half the excess money included in the relevant line item will go to fund employee awards.) Such a procedure could well be said to require "the inclusion of a particular program or amount" in the budget.

### III. CONCLUSION

We need not decide today whether a gainsharing program with or without an adjustable baseline would satisfy the *Wright–Patterson* test. For we must in any event remand this matter for the Authority to clarify what it means to require "inclusion of a particular program or amount in [a federal employer's] budget."

*So ordered.*