10 F.3d 13
 304 U.S.App.D.C. 35
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
HEADQUARTERS, UNITED STATES AIR FORCE, Petitioner,
v.
FEDERAL LABOR RELATIONS AUTHORITY, Respondent.
 No. 92-1175.
 United States Court of Appeals, District of Columbia Circuit.
 Nov. 12, 1993.
 
 Before: MIKVA, Chief Judge, SILBERMAN and RANDOLPH, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This case was considered on the record of the Federal Labor Relations Authority and on the briefs filed by the parties and arguments by counsel. The arguments have been accorded full consideration by the court and occasion no need for a published opinion. See D.C.Cir.Rule 14(c). For the reasons stated in the accompanying memorandum, it is
 
 
 2
 ORDERED and ADJUDGED, by the Court, that the petition for review be denied.
 
 
 3
 The Clerk is directed to withold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 15.
 
 MEMORANDUM
 
 4
 The Federal Labor Relations Authority ("FLRA") ruled that the Air Force violated sections 7116(a)(1) and (5) of the Federal Service Labor-Management Relations Statute, 5 U.S.C. Secs. 7101-7135 (1988) ("FSLMRS" or "Statute"), by directing management officials at Scott Air Force Base, Illinois, to issue notices of a proposed furlough to civilian employees without first bargaining with the employees' union over the "impact and implementation" of the notices. Because we agree with the FLRA that its prior decision in Department of the Air Force, Scott Air Force Base, Illinois, 35 FLRA 844 (1990) (Scott AFB ) controls the case before us, we affirm the Authority's ruling.
 
 Background
 
 5
 In the wake of the 1990 federal budget impasse, the Air Force was confronted with the possibility that it would be unable to pay its civilian employees from appropriated federal funds. Accordingly, on September 14 of that year, the Air Force directed its subordinate units, including Scott Air Force Base in Illinois, to issue by September 18, notices proposing to furlough all civilian employees paid from appropriated funds. Civil service law requires that federal employees be given at least 30 days written advance notice of a furlough. 5 U.S.C. Sec. 7513(b).
 
 
 6
 On Friday, September 14, a representative of Scott Air Force Base informed the acting president of the National Association of Government Employees, Local R7-23, ("union"), which represents two bargaining units at the base, that the base would issue the furlough notices on the following Monday, September 17. That Monday, base management gave the union a draft of the proposed notice and, over the objections of union officials, issued the notices the following day. The notices informed bargaining unit members that the Air Force "proposes to furlough you no earlier than 30 days from receipt of this notice." It went on to state that the furlough notices were "being issued as a contingency" and that "furlough[s] may not be required." Subsequent congressional action obviated the need for the furloughs, and none ever occurred.
 
 
 7
 The FSLMRS requires management officials of federal agencies to bargain with employees over "conditions of employment" including "personnel policies, practices, and matters ... affecting working conditions...." 5 U.S.C. Sec. 7103. This duty to bargain is limited by Sec. 7106(a), which sets forth several "management rights" that are not subject to bargaining, even if they pertain to conditions of employment. However, even as to nonnegotiable management rights, Sec. 7106(b) requires bargaining over the "procedures which management officials of the agency will observe in exercising [their] authority" and over "appropriate arrangements for employees adversely affected...." The union alleged, and the FLRA found, that the Air Force failed to engage in this latter type of bargaining--commonly referred to as "impact and implementation" bargaining.
 
 Discussion
 
 8
 The scope of our review here is narrow. We may set aside the Authority's interpretation of the FSLMRS only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. Sec. 7123(c) (incorporating Sec. 10(e) of the Administrative Procedure Act, 5 U.S.C. Sec. 706); see Overseas Educ. Ass'n, Inc. v. FLRA, 858 F.2d 769, 771-72 (D.C.Cir.1988).
 
 
 9
 In Scott AFB, which the Air Force did not petition for review, the Authority held that the issuance of reduction in force (RIF) notices effected a change in conditions of employment triggering "impact and implementation" bargaining because the notice recipients became subject to personnel actions to which they were not subject previously. In our view, the Scott AFB holding is dispositive of this case. The civilian employees who received furlough notices likewise became subject to an adverse personnel action: they were subject to being furloughed after, but not before, receiving the statutorily-required notices.
 
 
 10
 Petitioner's attempts to distinguish Scott AFB are in vain. Any factual differences that exist between the RIF notices in Scott AFB and the furlough notices here are not so great as to warrant a departure from the Scott AFB holding. As a consequence, any quarrel with the Authority's decision to require the Air Force to submit to bargaining over furlough notices is one with Scott AFB itself. The Air Force chose not to fight that battle, so it cannot now avoid its result.
 
 
 11
 The Authority was correct in its finding that the Air Force violated the Statute and in ordering relief accordingly.