# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 14, 2016     Decided December 30, 2016

No. 15-1208

UNITED STATES DEPARTMENT OF THE AIR FORCE, LUKE AIR
FORCE BASE, ARIZONA,
PETITIONER

v.

FEDERAL LABOR RELATIONS AUTHORITY,
RESPONDENT

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, LOCAL
1547,
INTERVENOR

———

On Petition for Review of an Order of
the Federal Labor Relations Authority

———

*Mark W. Pennak*, Attorney, U.S. Department of Justice,
argued the cause for petitioner. With him on the brief were
*Benjamin C. Mizer*, Principal Deputy Assistant Attorney
General, and *Leonard Schaitman* and *H. Thomas Byron*,
Attorneys.

*Zachary R. Henige*, Deputy Solicitor, Federal Labor
Relations Authority, argued the cause for respondent. With
him on the brief were *Fred B. Jacob*, Solicitor, and *Stephanie
J. Fouse*, Attorney.

*David A. Borer*, *Andres M. Grajales*, and *Mark L. Vinson* were on the brief for intervenor American Federation of Government Employees, Local 1547 in support of respondent. *Judith D. Galat* entered an appearance.

Before: TATEL, *Circuit Judge*, and EDWARDS and GINSBURG, *Senior Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: The Federal Labor Relations Authority ordered the Air Force to bargain collectively with its civilian employees over access to an on-base shoppette—a gas station and convenience store that forms part of the military's network of commissaries and exchanges. The Air Force challenges that decision, arguing, among other things, that the issue is not a proper subject of bargaining because Congress has given the military unfettered discretion to determine whether civilians may patronize commissaries and exchanges. For the reasons set forth below, we agree and grant the Air Force's petition for review.

**I.**

The Federal Service Labor-Management Relations Statute, enacted in 1978 as Title VII of the Civil Service Reform Act, governs collective bargaining in the federal workplace. The statute grants federal employees the right to collectively bargain over "conditions of employment." 5 U.S.C. § 7102(2). Under Authority and D.C. Circuit precedent, however, employees have no right to bargain over matters that Congress has committed to an agency's "unfettered discretion." *Illinois National Guard v. FLRA*, 854 F.2d 1396, 1401 (D.C. Cir. 1988); *see Patent Office Professional Association & U.S. Department of Commerce*,

59 F.L.R.A. 331, 346 (Sept. 30, 2003) (holding that the Authority may not order an agency to bargain over matters within the agency's "sole and exclusive discretion" (internal quotation marks omitted)).

The dispute here began when some 800 civilian employees of Luke Air Force Base, Arizona, represented by their exclusive bargaining agent, Local 1547 of the American Federation of Government Employees, sought access to the Base's commissaries and exchanges—stores run by the Defense Department that sell reduced-price food and merchandise to members of the uniformed services, National Guardsmen and reservists, and certain retirees, dependents, and survivors. *See* 10 U.S.C. §§ 2481(a), 1061–1064. Commissaries are similar to grocery stores. *See id.* § 2484(a). Exchanges take a variety of forms, from department-store-like retail outlets to laundromats, gas stations, flower shops, and fast-food franchises. *See* Department of Defense Instruction 1330.21, Enclosure 3.1.1 (July 14, 2005). If accepted, Local 1547's proposal would have significantly expanded shopping privileges for civilian employees, who, under existing rules, were allowed to buy only food and beverages from "any exchange food activity, if consumed on post." *See id.*, Enclosure 6, Table E6.T2.6.

In response, the Air Force filed with the FLRA what is known as a negotiability appeal, in which it argued that the proposal was nonnegotiable because it lacked a connection to employee working conditions. The FLRA disagreed and ordered the Air Force to negotiate with the union. *See American Federation of Government Employees, Local 1547 & U.S. Department of the Air Force, Luke Air Force Base, Arizona* ("*Local 1547 I*"), 64 F.L.R.A. 642, 646–47 (Apr. 7, 2010).

The parties resumed discussions but soon reached impasse. The union brought the matter to the Federal Service Impasses Panel, which ordered the parties to participate in mediation-arbitration before an arbitrator, who the Panel empowered to issue a binding decision if the parties were unable to reach a settlement. Before mediation began, however, the union circulated a revised proposal seeking shopping privileges only at the Base's Shoppette, a 24-hour gas station and convenience store that sells such things as fresh and frozen food, gas, and certain health and household items. After mediation over this more limited proposal failed, the arbitrator sided with the union and ordered the Air Force to give its civilian employees access to the Shoppette.

When the Air Force refused to implement the arbitrator's decision, the union filed a second negotiability appeal with the FLRA. Although the Air Force again insisted that the proposal had nothing to do with employee working conditions, it added a second argument: that the proposal was not a proper subject of bargaining because Title 10 of the U.S. Code, which governs all military operations, gives the Secretary of Defense "unfettered discretion" over commissaries and exchanges. *See*, *e.g.*, *Illinois National Guard*, 854 F.2d at 1401. Unpersuaded, the FLRA ordered the Air Force to implement the proposal. *See American Federation of Government Employees, Local 1547 & U.S. Department of the Air Force, Luke Air Force Base, Arizona* ("*Local 1547 II*"), 67 F.L.R.A. 523, 525–30 (July 29, 2014). One member dissented, reasoning that Title 10, when "read in its entirety and in its historical context," leaves the question of "authoriz[ing] access to military exchanges . . . to the sole discretion of the Secretary of Defense." *Id.* at 532–33 (Member Pizzella, Dissenting). The Air Force sought reconsideration, which the FLRA denied. *American Federation of Government Employees, Local 1547 & U.S.*

*Department of the Air Force, Luke Air Force Base, Arizona*, 68 F.L.R.A. 557, 558–61 (May 13, 2015).

The Air Force petitions for review. It argues, as it did before the FLRA, that it has no duty to bargain over the Shoppette proposal because Title 10 grants the Secretary of Defense complete discretion to decide whether civilian employees may shop at commissaries and exchanges. It also argues that the Authority failed to point to any record evidence in support of its conclusion that the proposal concerns employee working conditions.

## II.

We begin with the Air Force's first argument, and because it relies on a particular interpretation of several provisions of Title 10, we think it best to proceed by first exploring the parties' understanding of these provisions and then setting forth our own interpretation of the statute's meaning. In doing so, we owe the Authority no deference, as we "review[] *de novo* the FLRA's interpretation of a statute it is not charged with administering." *U.S. Department of the Air Force v. FLRA*, 648 F.3d 841, 846 (D.C. Cir. 2011).

## A.

The Air Force anchors its unfettered-discretion argument in 10 U.S.C. § 2481, which provides that "[t]he Secretary of Defense shall operate, in the manner provided by this chapter and other provisions of law, a world-wide system of commissary stores and a separate world-wide system of exchange stores." *Id.* § 2481(a). Both systems may "sell, at reduced prices, food and other merchandise" to a closed set of military and military-related patrons—*i.e.*, "members of the uniformed services on active duty, members of the uniformed services entitled to retired pay, dependents of such members,

and persons authorized to use the system under chapter 54 of this title." *Id.*; *see id.* § 101(a)(5) (defining "uniformed services"). Chapter 54 extends shopping privileges to members of the Guard and Reserve, along with certain retirees, dependents, and survivors. *See id.* §§ 1061–1064. Section 2481 also sets forth Congress's reasons for creating these stores, explaining that they are "intended to enhance the quality of life of members of the uniformed services, retired members, and dependents of such members, and to support military readiness, recruitment, and retention." *Id.* § 2481(b). As the Air Force points out, missing from section 2481's list of authorized patrons and beneficiaries is any mention of civilian employees of the Defense Department.

The Air Force then moves to a more specific provision of Title 10, section 2484, which prescribes in subsection (b) an exacting list of goods that may be sold in commissaries: "[m]eat, poultry, seafood, and fresh-water fish," etcetera. *Id.* § 2484(b). Subsection (c)(1) provides that the Secretary may add additional items to that list, so long as he notifies Congress, *see id.* § 2484(c)(1), and subsection (c)(2) then explains that "[n]otwithstanding [subsection (c)](1), the Department of Defense military resale system shall continue to maintain the *exclusive right to operate* convenience stores, *shopettes*, and troop stores . . . [,]" *id.* § 2484(c)(2) (emphases added).

The Air Force argues that the phrase "exclusive right to operate . . . shopettes," *id.*, means what it says: that the military has unfettered discretion to operate "shopettes" like the one at Luke AFB. And because, in its view, "common usage [of] the term 'operate' includes access determinations," Petitioner's Br. 33, Congress conferred "unfettered discretion" on the military to determine who may patronize commissaries and exchanges, thereby exempting the Air

Force from bargaining over the union's proposal, *see Illinois National Guard*, 854 F.2d at 1402.

For its part, the Authority argues that section 2484(c)(2)'s reference to the Secretary's "exclusive right to operate . . . shopettes" relates not to who can patronize them, but rather only to the selection of merchandise and the setting of prices. The Authority also points out that the commissary-and-exchange provisions nowhere state that the Secretary has authority to control access "'notwithstanding' other provisions of law"—language that, according to the Authority, this court has found signals congressional intent to exempt an agency from the duty to bargain. *See* Respondent's Br. 38 (quoting *Colorado Nurses Association v. FLRA*, 851 F.2d 1486, 1488 (D.C. Cir. 1988), *superseded by statute*, Department of Veterans Affairs Labor Relations Improvement Act of 1991, Pub. L. No. 102–40, title II, § 202, 105 Stat. 187, 200, *as recognized in National Federation of Federal Employees Local 589 v. FLRA*, 73 F.3d 390, 390–91 (D.C. Cir. 1996).

**B.**

We agree that Congress has given the military unfettered discretion to determine whether civilians may patronize commissaries and exchanges, though for reasons that are slightly different from those offered by the Air Force. Our starting point is section 113(b) of Title 10, which gives the Secretary of Defense "the authority, direction, and control over the Department of Defense." 10 U.S.C. § 113(b). Sections 3013, 5013, and 8013, in turn, grant the Secretaries of the Army, Navy, and Air Force "the authority necessary to conduct[] all affairs of the[ir respective] Department[s]," including the "functions [of] . . . Recruiting[,] . . . Administering (including the morale and welfare of personnel)[,] . . . and Maintaining" Department personnel. *Id.* §§ 3013(b); 5013(b); 8013(b).

Those sections also authorize the Branch Secretaries to "prescribe regulations to carry out [their] functions, powers, and duties under this title," subject only to "the authority, direction, and control of the Secretary of Defense." *Id.* §§ 3013(b), (g); 5013(b), (g); 8013(b), (g).

These three enumerated duties—recruiting, administering, and maintaining—appear in almost identical form in section 2481, in which Congress explained that it "intended [commissaries and exchanges] . . . to *support military readiness, recruitment, and retention*." *Id.* § 2481(b) (emphasis added). The symmetry between these purposes and the functions delineated in sections 3013, 5013, and 8013 is unmistakable, and we draw from it two basic conclusions. First, Congress intended commissaries and exchanges to advance the objectives of recruiting, administering, and maintaining the armed forces. Second, Congress gave the Branch Secretaries authority to decide how best to achieve those objectives, subject only to direction by the Secretary of Defense. *See* 10 U.S.C. §§ 3013(b), (g); 5013(b), (g); 8013(b), (g).

Given these legislative directives, we cannot imagine that Congress intended to empower a civilian agency like the Federal Labor Relations Authority to second-guess the military's judgment about non-military access to commissaries and exchanges. As the Supreme Court has made clear, "[i]n construing a statute that touches on" matters of internal military governance, like troop morale or discipline, "courts must be careful not to circumscribe the authority of military commanders to an extent never intended by Congress." *Brown v. Glines*, 444 U.S. 348, 360 (1980) (citation and internal quotation marks omitted). We have taken this concern seriously in the federal-labor-relations context, declining to require bargaining over proposals that

could potentially undermine military judgment even where the relevant statute never expressly shields the military from bargaining. In *National Federation of Federal Employees, Local 1623 v. FLRA*, 852 F.2d 1349 (D.C. Cir. 1988), for example, we found "unbargainable" a proposal by dual-status guard technicians that would have required civilian supervisors to attempt to "convince military officials to assign personnel in some manner other than the one they originally thought best." *Id.* at 1352. Although the proposal would not have led to civilians directly interfering with military-management choices, and although the Technician Act "d[id] not *specifically* countermand the Local's proposal," we concluded that it fell outside the duty to bargain because it would "subject [military personnel decisions] to civilian *influence*." *Id.* at 1352–53 (second emphasis added); *see also American Federation of Government Employees, Local 2953 v. FLRA*, 730 F.2d 1534, 1544–46 (D.C. Cir. 1984) (rejecting a proposal requiring military leaders to disregard National Guard technicians' military evaluations in favor of civilian evaluations when conducting layoffs, where the statute's purpose was "to assure that the *military* mission of the Guard would be carried out effectively and efficiently").

In this case, by requiring negotiation over the Shoppette proposal, the Authority has similarly second-guessed the Secretary's judgment in deciding how best to use a military benefit to achieve military purposes. The panel arbitrator required civilian access to the Shoppette because, in her view, "it is illogical that it is acceptable to have civilians enter a store to buy hot dogs, but damaging to [troop] morale if they are allowed to purchase aspirin, batteries, or tissues." Panel Arbitrator's Decision, at Joint Appendix 23. Agreeing with the arbitrator, the Authority reasoned that nothing in Title 10 "suggests that the incremental extension of benefits . . . from hot dogs to aspirin, batteries, [and] tissues . . . is unlawful."

*Local 1547 II*, 67 F.L.R.A. at 530 (internal quotations marks omitted) (alteration in original). But the Air Force Secretary, exercising his delegated "authority . . . to conduct[] all affairs of the Department" subject only to review by the Defense Secretary, 10 U.S.C. § 8013(b), decided otherwise. Contrary to both the arbitrator and the Authority, this case is not about hot dogs and aspirin, but rather whether the military retains its unfettered authority to determine if and under what circumstances non-military persons may enjoy access to commissaries and exchanges.

To be sure, in *American Federation of Government Employees, Local 2761 v. FLRA*, 866 F.2d 1443 (D.C. Cir. 1989), we concluded that access to a military exchange fell within the duty to bargain. *Id.* at 1447. But that decision predated by fifteen years Congress's enactment of Title 10's commissary-and-exchange provisions which, as we have explained, vest the Secretary with sole discretion over civilian-employee access to commissaries and exchanges. *See* Ronald W. Reagan National Defense Authorization Act for Fiscal Year 2005, Pub. L. No. 108–375, § 651, 118 Stat. 1811, 1964–73 (2004).

The Authority nonetheless argues that the Shoppette proposal is negotiable because nothing in Title 10 expressly precludes civilian employees from bargaining over access to commissaries and exchanges. In support, it points to *Illinois National Guard*, in which we held that the Technician Act gives the Army Secretary unfettered discretion to determine National Guard technicians' work schedules because the statute provides that, "[n]otwithstanding [the scheduling and overtime provisions] of title 5 or any other provision of law, the Secretary concerned may . . . prescribe the hours of duty for technicians." 854 F.2d at 1401 (quoting 33 U.S.C. § 709(g)(2) (1988) (emphasis omitted)); *see*, *e.g.*, *National*

*Treasury Employees Union (NTEU) v. FLRA*, 435 F.3d 1049, 1051 (2006) (holding that Comptroller of the Currency had sole and exclusive discretion over bank-examiner salaries where Congress provided that the "'employment and compensation of examiners . . . shall be without regard to the provisions of other laws applicable to officers or employees of the United States'" (quoting 12 U.S.C. § 481 (2006))). Since Title 10 contains no similar carve-out for commissaries and exchanges, the FLRA reasons, Congress must have intended them to be a proper subject of collective bargaining.

The Authority's argument suffers from two flaws. First, although it is true that the Authority "consider[s] the absence of such preemptive language . . . to be a strong indication that Congress did not intend [an agency] to have unfettered discretion" over a given matter, *Department of Veterans Affairs Veterans Administration Medical Center, Veterans Canteen Service*, 44 F.L.R.A. 162, 164–65 (Feb. 28, 1992), neither it—nor for that matter this Court—has ever held that a statute *must* contain phrases like "notwithstanding any law" to place a subject outside an agency's duty to bargain.

Second, in each of the cases cited by the Authority, the agency argued that the statute it administered—a statute that expressly addressed employment matters, such as hours, pay, and benefits, for a defined category of federal employees—exempted it from Title 5's broadly applicable civil-service rules, including collective-bargaining requirements. *See National Treasury*, 435 F.3d at 1051 (interpreting statute giving the Treasury Secretary authority to employ and compensate bank examiners); *Illinois National Guard*, 854 F.2d at 1403 (interpreting statute giving the Army Secretary authority to set work schedules for dual-status guard technicians); *Colorado Nurses Association*, 851 F.2d at 1488 (interpreting statute giving the Secretary of Veterans Affairs

authority to control hours and working conditions of medical personnel). In this case, however, the Air Force is not seeking to exempt itself from collective bargaining; it merely seeks to limit the scope of bargaining with respect to a matter that it believes Congress has committed to its unfettered discretion.

Moreover, Title 10's commissary-and-exchange provisions differ significantly from the statutes at issue in the case cited by the Authority. Those statutes all directly addressed an agency's employment-related authority, so it makes sense that the FLRA would describe its interpretive task as "ascertain[ing] whether Congress has clearly expressed an intent to *deprive employees* of their rights under the [FSLMRS]." Respondent's Br. 31 (emphasis added); *see Colorado Nurses*, 851 F.2d at 1489 (court must determine whether Congress intended to "exempt [a federal employer] from all laws governing the terms and conditions of federal employment"). Title 10's commissary-and-exchange provisions stand on wholly different footing, as they have absolutely nothing to do with civilian employment and everything to do with creating a military benefit designed to "support military readiness, recruitment, and retention." 10 U.S.C. § 2481(b). Given Congress's focus on defining a military benefit, which has nothing at all to do with terms and conditions of civilian employment, it would have had no reason to include a "notwithstanding" clause exempting that benefit from "'other laws applicable to [civilian] *officers or employees of the United States*.'" *National Treasury*, 435 F.3d at 1051 (quoting 12 U.S.C. § 481).

For all of these reasons, we hold that civilian access to commissaries and exchanges is not a proper subject of collective bargaining because Congress has vested the military with "unfettered discretion" over the matter. *See Illinois National Guard*, 854 F.2d at 1401. Although this is

sufficient to resolve this case, we think it nonetheless helpful to consider the Air Force's alternative argument—that the Authority failed to make any factual findings in support of its conclusion that the proposal concerns unit employee's conditions of employment—since that issue is likely to arise again in cases where collective bargaining is not barred by legislation giving the agency unfettered discretion over the subject of negotiations.

## III.

As the Authority has itself explained, in evaluating whether a proposal concerns conditions of employment, it must, among other things, determine if "the record establishes . . . a direct connection between the proposal and the work situation or employment relationship of bargaining unit employees." *Antilles Consolidated Education Association & Antilles Consolidated School System*, 22 F.L.R.A. 235, 237 (June 24, 1986). The Authority must also, as this Court has held, "point to evidence in the record establishing this link." *U.S. Department of the Air Force, Griffis Air Force Base v. FLRA*, 949 F.2d 1169, 1174 (D.C. Cir. 1991). And as with all Authority fact-finding, our role is limited to ensuring that its "findings of fact [are] supported by substantial evidence on the record considered as a whole." *Pension Benefit Guarantee Corp. v. FLRA*, 967 F.2d 658, 665 (D.C. Cir. 1992).

Consider a few examples. In one case, we upheld an Authority decision that declined to require the Department of Defense Dependents Schools to bargain over a proposal that would have extended into retirement a benefit allowing teachers to travel for free aboard military aircraft. *Overseas Education Association, Inc. v. FLRA*, 858 F.2d 769, 770, 772 (D.C. Cir. 1988). Although we recognized the clear link between free travel and working conditions for *active* employees, who were "called upon . . . to situate

themselves . . . abroad," we agreed with the Authority that nothing in the record showed that extending the free-travel benefit into "the golden years of retirement" would have had a "direct impact on an employee's day-to-day allegiance to his or her job." *Id.* at 772–73. In another case, civilian employees sought to bargain over an Air Force decision requiring them to challenge disciplinary actions, not on base, as they had been permitted to do for years, but rather before a magistrate court forty-two miles away. *Griffis Air Force Base*, 949 F.2d at 1171. Ruling for the employees, the Authority found a direct connection between the change in policy and the employee's working conditions, citing record evidence showing "that the [new] policy would cause employees to expend annual leave time to travel . . . , appear before the Magistrate, and prepare for trial." *Id.* at 1172. Given those findings, we had little difficulty deciding that the Authority's direct-connection conclusion rested "on firm ground." *Id.* at 1174.

In its brief on appeal here, the Authority acknowledges that its obligation to "ascertain whether there is a direct connection . . . is a factual determination, dependent on the record evidence in each individual case, and reviewed for substantial evidence supporting [its] conclusion." Respondent's Br. at 21–22. Surprisingly, however, the Authority engaged in no such fact-finding in this case. Instead of pointing to the circumstances at Luke AFB that tie Shoppette access to employee working conditions, the Authority simply cited its earlier decision in this case for the proposition that "access to military exchange and exchange-related facilities . . . concerns employees' conditions of employment." *Local 1547 II*, 67 F.L.R.A. at 525.

Of course, this would not be a problem had the earlier decision established the required factual link between

Shoppette access and employee working conditions. But it did no such thing. Even though the Air Force insisted that conditions at Luke AFB did *not* justify civilian access, the Authority made no contrary findings, instead rejecting the Air Force's arguments by simply citing its own precedent. For instance, the Air Force argued that nothing in the record supported allowing civilians to purchase groceries "not . . . ready for consumption." *Local 1547 I*, 64 F.L.R.A. at 646. In response, instead of describing the circumstances that, in its judgment, made it necessary for civilian employees to purchase such groceries, the Authority simply stated that its "precedent does not support finding that only proposals involving prepared foodstuffs concern conditions of employment." *Id.* The Air Force also argued that civilian employees had no need to shop during non-duty hours. *Id.* But rather than identifying the conditions on base that warranted off-duty access to the Shoppette, the Authority simply declared that "no decisions . . . support [the Air Force's] assertion." *Id.*

We could go on and on with more examples, but we think the point is clear: the Authority has entirely failed to establish a factual link between Shoppette access and base-employee working conditions. Although our role in reviewing negotiability determinations is limited, the Authority must find facts to give us something to review. Because it failed to do so in this case, we would grant the Air Force's petition for review on this ground were we not granting it on the antecedent ground that access to commissaries and exchanges falls outside the scope of collective bargaining.

## IV.

We grant the petition for review and vacate the Authority's order.

*So ordered.*